OPINION
{¶ 1} Appellants, DR Sawmill Sales, Inc. and Dick Ruhl, appeal from a judgment of the Franklin County Municipal Court in favor of plaintiff-appellee, Donna L. Lewis. Her action alleged breach of contract, violation of the Consumer Sales Practices Act ("CSPA"), and violation of the Uniform Fraudulent Transfer Act. This suit stemmed from appellee's attempt to obtain a refund of the purchase price of a supplemental warranty she purchased with a new automobile.
 {¶ 2} Dick Ruhl ("Ruhl"), through his corporation Dick Ruhl Ford Sales, Inc., operated a Ford dealership in northern Franklin County for 26 years. Lewis purchased a new vehicle there on June 30, 1993. With the vehicle, she also purchased a six year, 100,000 mile extended service plan ("ESP"). Her ESP purchase promised a full refund of the $1,185 ESP purchase price if she made no claim under the ESP for warranty service. The certificate providing for this refund contained the following language:
1. Extended Service Protection Policy must be purchased from DICK RUHL FORD.
2. Upon expiration of policy, bring policy receipt and certificate to DICK RUHL FORD during regular office hours: 9:00 a.m. to 5:00 p.m. Monday through Friday.
3. After verification that policy has not been used, DICK RUHL FORD will refund 100% of the selling price of the policy. Refund will be made to the original purchaser only and is not transferable. Original customer must still own automobile and have in his or her possession at time of warranty expiration.
4. DICK RUHL FORD'S only obligation is 100% of the selling price of the ESP policy, provided policy has not been used, revoked, cancelled, suspended or any such act that would otherwise lessen the value of the policy.
 {¶ 3} In November 2000, Lewis contacted the dealership to obtain a refund of the ESP purchase price. Despite the fact that Lewis had made no warranty claims under the ESP and still owned her vehicle, the dealership denied her refund request. The explanation was that the dealership policy required such a request to be made within 90 days after the expiration of the final year of warranty coverage. Lewis had made her request some 16 months after the expiration date of the warranty; however, the refund certificate as set forth above contained no time limitation on when a claim should be brought for a refund.
 {¶ 4} Lewis' request for a refund of her ESP purchase price coincided with the sale of the dealership by Ruhl. This transfer was structured as an asset sale, with the purchaser, Germain Auto Group, taking none of the liabilities of the prior operating entity. Dick Ruhl Ford Sales, Inc. was left with no assets because the proceeds of the sale were transferred to Ruhl individually. The dealership sale was finalized on or about January 1, 2001, and the now-gutted Dick Ruhl Ford Sales, Inc. was renamed DR Sawmill Sales, Inc., the present appellant. Lewis continued to pursue her refund, but was rebuffed by the new Ford dealership owner. She eventually was informed in writing by counsel for appellants that DR Sawmill Sales, Inc. had no assets, would not pay her claim, and would no longer defend the action.
 {¶ 5} Lewis initiated litigation with a complaint naming DR Sawmill Sales, Inc., and Germain Ford of Columbus, LLC, as defendants. After amendments and dismissals, the defendants at the time of trial were DR Sawmill Sales, Inc., and Ruhl individually. Lewis asserted claims of breach of contract, violation of the CSPA and the Uniform Fraudulent Transfer Act. The matter proceeded to a bench trial, and the court considered the case based upon the testimony of Ruhl and Lewis and the documentary evidence submitted by the parties.
 {¶ 6} On July 19, 2004, the trial court rendered a decision finding that Lewis' request for a refund was reasonably timed, that the refund certificate contained no limiting time term, and that the corporate defendant had breached the refund contract by failing to provide the promised refund of the cost of the ESP. The court further found for Lewis on her CSPA claim because the dealership's failure to refund the ESP purchase price after the expiration date of the warranty constituted a deceptive and unconscionable act as defined in the statute. The trial court found, however, that the defendants had not acted in violation of the Uniform Fraudulent Transfer Act.
 {¶ 7} The court then considered whether Ruhl personally should be held liable for the breach of contract claim and the violation of the CSPA. The trial court undertook an analysis of whether the corporate veil should be pierced to allow Lewis to reach the assets of Ruhl individually. The court found that DR Sawmill Sales, Inc. functioned as the alter ego of Ruhl individually and that the factors outlined by the Supreme Court of Ohio in Belvedere Condominium Unit Owners' Assn. v. R.E.Roark Cos., Inc. (1993), 67 Ohio St.3d 274, had been met. The court therefore found that Ruhl was personally liable as the sole shareholder of DR Sawmill Sales, Inc.
 {¶ 8} At a subsequent hearing, the trial court, based upon the CSPA provisions providing for treble damages and attorney fees, awarded Lewis the amount of $3,555 on her breach of contract claim and attorney fees in the amount of $8,062.50.
 {¶ 9} DR Sawmill Sales, Inc. and Ruhl have timely appealed, bringing the following assignments of error:
[I.] THE TRIAL COURT ERRED BY PIERCING THE CORPORATE VEIL OF DR SAWMILL SALES, INC., FORMERLY DICK RUHL FORD SALES, INC., AND FINDING DICK RUHL, ITS SOLE SHAREHOLDERS, PERSONALLY LIABLE.
[II.] THERE IS NO EVIDENCE TO SUPPORT THE TRIAL COURT'S CONCLUSION THAT DR SAWMILL SALES, INC. VIOLATED THE CONSUMER SALES PRACTICES ACT.
[III.] ASSUMING ARGUENDO THAT A VIOLATION OF THE CONSUMER SALES PRACTICES ACT OCCURRED, THE AWARD OF ATTORNEY'S FEES IN THE AMOUNT OF $8,062.50 IS UNREASONABLE.
 {¶ 10} For convenience of analysis, we will address the assignments of error out of numerical order, beginning with the second, which addresses the CSPA claim.
 {¶ 11} The trial court found that appellants violated the CSPA, specifically R.C. 1345.02 and 1345.03, which provide in pertinent part as follows:
1345.02 Unfair or deceptive acts or practices
(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
1345.03 Unconscionable acts or practices
(A) No supplier shall commit an unconscionable act or practice in connection with a consumer transaction. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.
 {¶ 12} The purpose of the CSPA is to protect consumers from the harm of deceptive or unconscionable sales practices. Roellev. Orkin Exterminating Co. (Nov. 7, 2000), Franklin App. No. 00AP-14. The statute is intended to give protection to consumers from unscrupulous suppliers of goods or services in a more efficient, expedient, and affordable manner than would be available in a common law tort or contract action. State ex rel.Celebrezze v. Howard (1991), 77 Ohio App.3d 387, 393. The CSPA has a remedial purpose and must accordingly be liberally construed in favor of consumers. Einhorn v. Ford Motor Co.
(1990), 48 Ohio St.3d 27, 29.
 {¶ 13} Appellants' appeal on the CSPA issues essentially asserts that the trial court's finding of a CSPA violation in this case is not supported by the manifest weight of the evidence introduced before the trial court. Otherwise the case does represent mixed issues of law and fact. When reviewing a trial court's decision on the basis that it is against the manifest weight of the evidence, we are guided by the presumption that the factual findings of the trial court were correct, because the weight to be given evidence and the credibility of witnesses are primarily determinations for the trier of fact. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflection, and gestures.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. Thus, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279.
 {¶ 14} Guidance as to what constitutes a deceptive act under the CSPA may be found in several sources. R.C. 1345.02(B) itself contains an enumerated list of practices categorized as deceptive. This enumerated list is, by its own terms, not exclusive. Additional definitions of deceptive acts may be found either through case precedent or substantive rules set forth in the Ohio Administrative Code. R.C. 1345.05(B)(2); Frey v. VinDevers, Inc. (1992), 80 Ohio App.3d 1. Intent is not a prerequisite to establishment of a CSPA violation; the only requirement is for the plaintiff to show that a deceptive act was in fact committed. Estep v. Johnson (1998),123 Ohio App.3d 307, 319.
 {¶ 15} The trial court in the present case found that appellants had violated Ohio Adm. Code 109:4-3-02(A)(1), which states that "it is a deceptive act or practice in connection with a consumer transaction for a supplier, in the sale or offering for sale of goods or services, to make any offer in written or printed advertising or promotional literature without stating clearly and conspicuously in close proximity to the words stating the offer any material exclusions, reservations, limitations, modifications, or conditions." Ohio Adm. Code 109:4-3-01(C)(5) defines advertising or promotional literature as including personal representations that identify or represent the terms of any transaction for goods or services.
 {¶ 16} In the present case, Lewis was shown the ESP refund certificate, which by its own explicit terms, contained no time limitation upon a request for refund upon expiration of the warranty, and accepted the in-person representation of the sales person that she would receive a 100 percent refund of the ESP purchase price under the terms otherwise outlined in the certificate. No one contested the written terms of this refund certificate. Rather, it was the interpretation of those terms that was challenged by appellants.
 {¶ 17} We agree with the trial court's conclusion that the ESP refund certificate falls under Ohio Adm. Code 109:4-3-01(C)(5) and 109:4-3-02(A)(1) as an offer in printed promotional literature that excluded a reservation, limitation, or other condition precluding the bargained-for benefit to the consumer. When appellee presented her claim to the dealership for a refund of her ESP purchase price, she had otherwise met all the other requirements explicitly set forth in the ESP certificate. However, she was met with a new limitation to preclude refund of her purchase price: a 90-day time limit. Appellants did not claim that this was part of the written certificate. Instead, it was simply read into the contract by them, presumably as a reasonable interpretation of when the refund must be claimed.
 {¶ 18} It is clear that there is competent, credible evidence in the record to support the trial court's finding of a deceptive sales practice on the part of appellants, and consequently a CSPA violation. When the performance period of a contract is undefined, the law implies a term assuming that the parties intended that performance take place within a reasonable time.Stewart v. Herron (1907), 77 Ohio St. 130, 147.
 {¶ 19} What constitutes a reasonable time for performance is an issue of fact to be determined by the conditions and circumstances under which the parties executed their agreement and contemplated performance. Miller v. Bealer (1992),80 Ohio App.3d 180, 182. The trial court's determination that Lewis presented her claim for refund within a reasonable time is supported by competent, credible evidence regarding the circumstances of the transaction, and may not be disturbed on appeal. Unspoken but implicit is the conclusion that 90 days wasnot a reasonable time frame. Lewis was therefore improperly deprived of her refund when appellants imposed an unsupported, arbitrary, and unreasonable new time limit on refunds.
 {¶ 20} We note that at various times during the course of litigation, appellants have pointed out that the ESP plan was for either 100,000 miles or six years. They therefore conclude that because Lewis had not reached 100,000 miles on her vehicle, she was not yet eligible for her refund. Despite the use of the disjunctive "or," they appear to argue that both conditions had to be met in order to apply for the refund. Put another way, appellants wish us to define "or" as "and." This rather awkward argument was made despite the fact that their initial rejection of the refund was based solely on the expiration of 90 days from the six-year term of the ESP. Initially, there was no reference to Lewis being premature in seeking her refund before
expiration of the mileage limit. It is not necessary for us to attempt to resolve the additional conundrum of how a request for refund can be barred on simultaneous grounds of prematurity and tardiness. It is sufficient that the argument regarding the mileage is not persuasive.
 {¶ 21} Appellants' second assignment of error is accordingly without merit and is overruled.
 {¶ 22} Appellants' third assignment of error argues that, if a violation of the CSPA occurred, the amount of attorney fees awarded by the trial court was excessive.
 {¶ 23} "Pursuant to [R.C. 1345.09(F)] a trial court, [in its discretion], may award a consumer reasonable attorney fees when the supplier in a consumer transaction intentionally committed an act or practice which is deceptive, unfair, or unconscionable."Einhorn, at 30. This award of fees is in accordance with the remedial purposes of the CSPA and serves both as an additional deterrent to the prohibited conduct and allows wronged consumers to bring suit in cases in which the typically small recovery sought by the consumer would be insufficient to justify the expense of legal action. Id. An overly restricted or inadequate award of attorney fees in a CSPA action "undermines both the purpose and deterrent effect of the Act." Bittner v. Tri-CountyToyota, Inc. (1991), 58 Ohio St.3d 143, 144.
 {¶ 24} The only limitation is that the award of fees be reasonable in the light of the complexity and extent of the litigation undertaken, and there is no need to examine the proportionality of the amount of fees in relation to the amount recovered. Id., citing City of Riverside v. Rivera (1986),477 U.S. 561, 578, 106 S.Ct. 2686 (examining comparable fee proportionality arguments under Section 1988, Title 42, U.S.Code.
 {¶ 25} Appellants' sole argument on appeal is that the amount of fees awarded by the trial court is nearly seven times the amount of the underlying claim. Appellants do not argue that the fees are out of proportion to the time and expertise invested in the case by counsel for appellee, nor does any aspect of the record indicate that the trial court lacked evidence upon which to base the amount awarded. The court held a hearing specifically on the question of attorney fees, heard testimony from an experienced local attorney on the amounts charged and time expended on the case, as well as testimony from counsel for appellee. None of these figures would support an abuse of discretion on the part of the trial court in its award. The clear precedent set forth above precludes any re-examination on the question of proportionality of fees to the amount of the primary award. Appellants' third assignment of error is accordingly overruled.
 {¶ 26} We finally turn to appellants' first assignment of error, which asserts that the trial court erred in piercing the corporate veil to find Ruhl personally liable for the CSPA violation committed by DR Sawmill Sales, Inc. The following facts are undisputed, being based upon the testimony of Ruhl. Ruhl was the sole shareholder of the corporation at issue, initially known as Dick Ruhl Ford Sales, Inc. and later as DR Sawmill Sales, Inc. When the corporation sold the dealership assets, the entire proceeds of the sale came to Ruhl personally, although he could not remember, at the time of trial, whether he received a check directly or the funds transited through the corporation. In either case, the corporation was left without assets, but because the sale of the dealership had been structured as an asset sale, certain residual liabilities, such as the warranty refund claim in question, remained the responsibility of the corporation. Ruhl was aware of the pending warranty refund claim at the time of the dealership sale. He was aware of Ford's warranty refund program and had approved initiation of the program at his dealership. He later chose to terminate the refund program because it was not profitable. He was familiar with the language of the refund certificate, and had approved its use.
 {¶ 27} By definition and practice, a corporation is a distinct legal entity, separate and apart from the natural individuals who formed it and own it. Janos v. Murduck (1996),109 Ohio App.3d 583, 587. As such, shareholders, officers, and directors will generally not be held personally liable for the debts of a corporation. A limited exception to this rule exists in all jurisdictions, however, and is embodied in Ohio by the Supreme Court of Ohio's decision in Belvedere, supra. The court therein held that the corporate veil could be pierced to allow creditors to personally reach shareholders who had used the corporation for criminal or fraudulent purposes:
The corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.
Id. at paragraph three of the syllabus. The burden of proving that the corporate veil should be pierced lies with the party seeking to hold the individual shareholder or shareholders liable. Zimmerman v. Eagle Mortgage Corp. (1996),110 Ohio App.3d 762, 772.
 {¶ 28} The first element required under Belvedere is that the defendant shareholder have exercised such control over the corporation that the corporation had no separate mind, will, or existence of its own. In the present case, Ruhl was not particularly forthcoming in his testimony regarding the degree of control he exercised over the corporation. Neither did appellee have documentary or other evidence as to whether the usual corporate formalities were present in the form of an independent board of directors or other structures that would temper Ruhl's direction of the company to his sole benefit.
 {¶ 29} If such structures existed, it was clear that they were either ignored or bypassed by Ruhl. The degree of controlled exercised by Ruhl was certainly apparent from his own description of his singular decision to sell the dealership and retain all of the proceeds of the sale himself. It was clear from Ruhl's testimony that there had been an asset-only sale conducted at his sole discretion; that he made the decision to transfer to himself the resulting proceeds; and that he decided to leave no remaining assets to provide for known liabilities and claims.
 {¶ 30} Thus, the trial court had before it sufficient credible evidence from which it could draw a reasonable inference that the first element of the Belvedere test had been met. The corporation had, at the time of the sale, for all substantial purposes no separate existence apart from Ruhl's personal interests.
 {¶ 31} The second element required by Belvedere is that the shareholder or shareholders have exercised their control over the corporation in the furtherance of an illegal act against the person seeking to pierce the corporate veil. In the present case, Ruhl knowingly left the residual corporation without funds to cope with existing liabilities. It need not be demonstrated (nor has it been) on the present facts that Ruhl's prior, long-term ownership and control of the corporation for the business of operating an auto dealership was undertaken specifically for purposes of committing a CSPA violation. It is sufficient that during the sale of the dealership assets and subsequent distribution of the proceeds, his exclusive control over the corporation did rise to that level.
 {¶ 32} The act of stripping the corporation of assets removed any reasonable possibility for the residual corporation to pay the ESP purchase price refund which appellee was owed. Ruhl knew that DR Sawmill Sales, Inc. had incurred a written contractual liability with no stated expiration date. He was aware that his corporation's agents had denied payment in a manner that we have determined constituted a CSPA violation. His subsequent stripping of the corporation left appellee with no chance of collecting her ESP refund. Ruhl certainly benefited personally from these events. Those facts create a reasonable inference that Ruhl approved and controlled these corporate maneuvers in furtherance of an illegal act. We accordingly find that the second element ofBelvedere is met in the present case.
 {¶ 33} The third element of Belvedere is that the party seeking to pierce the corporate veil has suffered injury or unjust loss. We find that this element is met in the present case without necessity for further explanation.
 {¶ 34} Because the facts of the case support the conditions set forth by the Supreme Court of Ohio for piercing the corporate veil and holding a shareholder personally liable, we find that the trial court did not err in finding Ruhl personally liable for the claims proved by appellee against DR Sawmill Sales, Inc. Appellants' first assignment of error is accordingly overruled.
 {¶ 35} In accordance with the foregoing, appellants' first, second, and third assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed in all respects.
Judgment affirmed.
Bryant and Petree, JJ., concur.
Christley, J., retired of the Eleventh Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.