[No. B115302. Second Dist., Div. Seven. Sept. 21, 1999.]

FILIPPO INDUSTRIES, INC., Plaintiff and Appellant, v.
SUN INSURANCE COMPANY OF NEW YORK et al., Defendants and
Appellants.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The opinion is to be published in full with the exception of parts II, III and V of the Discussion portion of the majority opinion and the concurring and dissenting opinion of Justice Fred Woods, which speaks only to the portions of the majority opinion that have been omitted.

## COUNSEL

Krane & Smith and Samuel Krane for Plaintiff and Appellant.

Crosby, Heafey, Roach & May, James C. Martin, Robert S. Schulman and Joseph P. Mascovich for Defendants and Appellants.

## OPINION

HAY, J.*—Appellants Sun Insurance Company of New York (Sun), Phoenix Assurance Company of New York (Phoenix),[1] and William H. McGee & Co., Inc. (McGee) appeal from the denial of their motion for judgment notwithstanding the verdict, from the judgment, from the order on their motion to tax costs, and from the order on respondent's motion for additional attorney fees.

Respondent Filippo Industries, Inc. (Filippo) filed a notice of appeal seeking interest on the awards from the date of judgment onwards. It has also filed a protective cross-appeal to take effect in the event that McGee's appeal for judgment notwithstanding the verdict is successful. In such case it requests that Sun be substituted in for McGee in liability for punitive damages or, in the alternative, it seeks a new trial on McGee's liability, or a new trial on Sun's liability therefor.

We hold that the evidence was insufficient to uphold a verdict on either count against McGee because it was the agent for a disclosed principal. The majority holds that the evidence was sufficient as to Sun on both causes of action and finds that no error of the trial court calls for reversal of the judgment.

The dissent finds the evidence insufficient as to Sun on both causes of action and finds prejudicial error by the trial court and would reverse.

### FACTS

Filippo was a distributor of women's sportswear owned and operated by David Shemtov and Sam Varon who had previously owned and operated D & S Sportswear (D & S). D & S had had an open marine cargo insurance

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1]It was stipulated that Phoenix will assume all liabilities of Sun. As all events in this case concerned Sun, Phoenix will not hereafter be referred to as an appellant.

policy obtained from Sun's underwriter and manager, McGee, in 1986, which covered the shipment of imported goods from abroad to the United States. An endorsement to the D & S policy covered shipments within the United States, and specifically included goods of domestic origin. A further endorsement afforded warehouse coverage, which D & S canceled in January 1988.

Filippo asked its insurance broker, Sander A. Kessler & Associates (Kessler), to obtain an open marine cargo insurance policy to cover its goods in transit from overseas. The policy was bought from Sun through its underwriting agent McGee[2] and became effective July 1, 1990. The policy provided $650,000 in transit coverage (with a $5,000 deductible), covered the invoice price of goods, freight, duty, plus 10 percent, and included a special warehouse endorsement giving coverage up to $1 million while goods were stored in Filippo's Los Angeles warehouse.

The policy required Filippo to submit monthly cargo reports of the value of goods imported from overseas, and warehouse reports of the value of goods stored at its warehouse, the latter being a value reporting provision of the actual values of its clothing inventory at risk. These reports were to be used to assess the premiums due. Further provisions were that the insurance was not to be prejudiced by any unintentional delay in reporting and that claims were to be paid within 30 days of satisfactory proofs and adjustment of loss and proofs of interest being filed. In autumn 1991 Filippo started contracting for some domestic goods without informing McGee. If any domestic goods were stored in the warehouse, they were not listed separately in the monthly reports.

A habit of late reporting developed, which was accepted by McGee without complaint. On March 8, 1992, Filippo submitted the warehouse reports for July to December 1991 declaring goods valued at approximately $647,000. These were the last reports filed before May 14, 1992, when a fire occurred at Filippo's warehouse destroying or damaging its total inventory. This was two weeks after Filippo had increased its insurance coverage with Sun from $1 million to $1.5 million, and had also insured a special shipment of goods in an Ohio warehouse, which were shipped to the Los Angeles warehouse on May 14, 1992. It was approximately two weeks after the Los Angeles riots of April 29 and 30, 1992. Filippo submitted warehouse reports for January through April 1992 after the fire, the April report declaring a value of more than $1.5 million.

The fire was promptly reported to McGee, which retained an independent adjuster, James Donovan (Donovan). The latter toured the warehouse on

---

[2]McGee was Sun's attorney in fact, underwriter and manager. Its representative, Joseph Carney, handled Filippo's claim.

May 15, 1992, with Filippo's adjuster, Gary Johnson (Johnson) and learned that some of the goods were domestic and that the loss appeared to be a policy limit loss. On May 22, 1992, Donovan retained a salvage company, Greer and Kirkby, to remove goods to prevent further damage to them and to keep them pending examination to see what could be salvaged.

Donovan suspected that arson had caused the fire, but reported that the Los Angeles Fire Department would not be able to investigate the fire thoroughly because of the hundreds of fire investigations outstanding from the recent riots.

McGee knew by June 12, 1992, that the loss amounted to $1,713,000. Filippo filed its formal claim on June 12, 1992, for $1.5 million; the claim included domestic goods. Because Filippo knew that the total loss exceeded the policy limits, it under-reported its loss and did not claim for freight, duty, or the 10 percent. McGee asked on June 16, 1992, that Filippo submit its cargo and warehouse reports for January through July 1992.

McGee completed its investigation of the fire on July 1, 1992, and knew by the next day that domestic goods were involved. In July, Donovan suggested that McGee obtain a coverage opinion because it was unclear to him whether coverage was afforded for domestic goods. McGee received the coverage opinion on August 5, 1992, but it did not clarify the issue. By the end of August, McGee knew that the $1.7 million loss was 98 percent accurate and that domestic goods comprised approximately half the total loss.

Filippo had an insurance policy with Zurich American Insurance covering the building and business papers. On May 15, 1992, Johnson wrote to both insurance companies by copies of the same letter requesting an advance of $500,000. A further request was made on June 19, 1992. Such requests were repeated with growing urgency. On July 16, 1992, a payment of $250,000 was made.

On September 4, 1992, McGee advanced another $400,000. The total given by this point, $650,000, was, therefore, 43 percent of the policy limit. No explanation was given for refusing to give the policy limit of $1.5 million, which had been claimed, but no audit of the warehouse inventory had yet been received from Donovan's accountant.

By June 9, 1992, McGee knew the claim was approaching $1.7 million and 10 days later that the figure was $1,713,798. By the end of the year, appellants had received several urgent requests from respondent to settle the

claim because its financial stability was seriously threatened by the total loss it had sustained.

Throughout October, November and December, Donovan asked for a decision on the coverage of domestic goods, and Filippo contacted McGee directly to emphasize that it needed the coverage decision for its own business purposes. Filippo also asked for a further $250,000 advance, which request was refused pending receipt by McGee of the warehouse inventory reports for January, February, March, and April 1992. These reports were finally produced on December 8, 1992, and confirmed that over $1.5 million worth of goods had been in the warehouse as of April 30, 1992.

On January 28, 1993, McGee informed Filippo that it denied any coverage beyond the $650,000 it had already advanced. It stated that it would not provide coverage for any amount in excess of that declared in the last inventory report submitted before the fire, namely, that submitted in March which reported inventory in December 1991 with a value of $647,000. Nor would it cover goods for which Filippo had not paid premiums before the fire, or domestic goods. McGee's vice-president could not offer any reason why it took from July until January to deny coverage for domestic goods.

Sun cancelled Filippo's policy one month after the fire because of loss experience. Filippo went out of business in July 1993.

Filippo filed its lawsuit on February 19, 1993, against Sun and McGee for breach of contract and breach of the duty of good faith and fair dealing (bad faith), and against Kessler for negligence in failing to provide domestic coverage. This was a protective filing in case Sun and McGee should not be found liable for domestic goods.

Sun and McGee moved for summary judgment on December 23, 1993, alleging that they were not required to pay a claim for any inventory that had not been reported before the fire occurred. Kessler joined in the motion claiming that, as Sun had paid for all goods declared before the fire, both domestic and imported, no negligence on its part could be shown. The trial court granted the motion as to all defendants on January 24, 1994, finding that Sun had fully reimbursed Filippo for all goods, domestic and imported.

Filippo appealed and this court rendered a decision in *Filippo Industries, Inc.* v. *Sun Ins. Co.* (1995) 35 Cal.App.4th 1728 [42 Cal.Rptr.2d 182] (*Filippo I*), which became final on September 25, 1995. This court held that the policy provided coverage for actual values as reported; the higher the reported value, the higher were to be the premiums. After the fire, Filippo

had reported April's actual value as over $1.5 million and this court held that the April report determined coverage for the fire of May 14, 1992. (*Id.* at p. 1734.) The court held that the absence of any clause specifying any consequences of late filing of inventory reports, coupled with Sun's apparent acquiescence in the practice, precluded Sun's denying coverage. (*Ibid.*) The court therefore reversed the trial court's grant of summary judgment as to Sun and McGee. As the issue of domestic versus imported goods was not raised in this court beyond one brief paragraph in Filippo's opening brief on appeal, the judgment as to Kessler was affirmed. On February 16, 1996, appellants paid $225,876 to respondent.

The jury was told that the appellants were deemed not to have been in breach of the duty of good faith and fair dealing between January 24, 1994, and September 25, 1995, which was the period between the trial court's granting summary judgment and the finality of this court's decision reversing that finding. The jury specifically found that both defendants breached before and after that period.

The jury found both appellants in breach of contract in not paying $624,124 for domestic goods by January 1, 1993, and in not paying $225,876 more than had already been paid for imported goods by January 1, 1993. Both appellants were found in breach of the contract of good faith and fair dealing and liable for $4,125,000 in damages therefor. Finally both appellants were found liable for punitive damages in the sums of $750,000 against Sun and $1.5 million against McGee. The trial court found both appellants liable for attorneys' fees of $637,029.63 under *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796], and prejudgment interest of $275,982.06 plus $70,609.28 under Civil Code section 3287, subdivision (a).

## Discussion

Appellants argue that there is no substantial evidence supporting the verdict for violation of the duty of good faith and fair dealing (bad faith), and that judgment should have been entered for them on that cause of action. Though they claim a dearth of evidence, appellants are really contending that there was a surfeit of evidence. They argue that the jury should not have been permitted to decide whether or not the policy afforded coverage for domestic goods, but that the court should have decided that issue as a matter of law and should have ruled against such coverage. In the alternative, the court should have found that their denial was reasonable and precluded bad faith as a matter of law. In either event, the jury should not have heard evidence on bad faith in connection with domestic goods. Similarly, appellants argue, the trial court should have found, as a matter of law, that no bad

faith could be premised on the refusal to pay for goods in excess of those last reported before the fire. Such a finding would have led to exclusion of any further evidence of bad faith.

Sun does not contest the verdict on breach of contract as far as coverage for imported goods is concerned, but asks us to strike the award for domestic goods. Both appellants claim that there is insufficient evidence to support an award of damages on the theory of loss of the company, but this contention is also based on the late filing and domestic goods arguments mentioned above. In addition, appellant McGee seeks reversal and entry of judgment in its favor in both causes of action based on insufficiency of the evidence. It claims that it cannot be held liable for breach of contract nor for violating the duty of good faith and fair dealing that flows from that contract because it was not a party to that contract.

Thus we are called upon to decide, in the first analysis, whether the trial court committed any prejudicial error in its rulings *in limine* admitting evidence of alleged bad faith, or in any evidentiary or instructional rulings. If we find such error, we shall evaluate the evidence, shorn of erroneously admitted matter, for its sufficiency to uphold the verdicts. If we find no error, we shall evaluate all evidence for its sufficiency. Lastly we will examine the exclusion of evidence to see if prejudicial error occurred.

*Issues presented*

1.   When an insurer prevails in a motion for summary judgment on its interpretation of the policy coverage but that ruling is reversed on appeal, does the trial court ruling establish, as a matter of law, the lack of bad faith?

2.   Should the jury have been permitted to interpret the policy as to domestic goods? If not, should this court now interpret it to exclude coverage for domestic goods or, in the alternative, find the insurer's interpretation reasonable?

3.   Was the evidence sufficient to support the verdicts?

4.   Was McGee merely an agent for a disclosed principal and therefore not liable for damages?

5.   Was prejudicial error committed in the trial?

I.   *Does a Trial Court's Ruling in Insurer's Favor on Interpretation of the Policy Establish Lack of Bad Faith as a Matter of Law?*

Appellants' position is that a genuine issue existed as to the effect on coverage of Filippo's failure to file warehouse and inventory reports, and

that this is demonstrated most forcibly by the fact that the trial court ruled in their favor on that point. Even though the trial court's ruling was reversed on appeal, they argue, the lack of bad faith is established as a matter of law.

■ " 'The ultimate test of bad faith liability in the first party cases is whether the refusal to pay policy benefits was unreasonable.' [Citations.] In other words, 'before an insurer can be found to have acted tortiously, i.e., in bad faith, in refusing to bestow policy benefits, it must have "done so without proper cause." ' " (*Opsal* v. *United Services Auto. Assn.* (1991) 2 Cal.App.4th 1197, 1205 [10 Cal.Rptr.2d 352], italics and brackets omitted.)

■ "Although an insurer's bad faith is ordinarily a question of fact to be determined by a jury by considering the evidence of motive, intent and state of mind, '[t]he question becomes one of law . . . when, because there are no conflicting inferences, reasonable minds could not differ. [Citations.]' [Citation.] Thus, the issue of bad faith may, in specific instances, be treated as an issue of law." (*Dalrymple* v. *United Services Auto. Assn.* (1995) 40 Cal.App.4th 497, 511 [46 Cal.Rptr.2d 845].) ■ Appellants argue that the instant case is such a specific instance.

The issue on appeal in *Dalrymple* was whether the court or the jury should have decided whether the insurer acted with proper cause in filing the declaratory relief action. The holding was that, when the essential facts on which the insurer acted are not disputed, it is the trial court which must make this determination. (40 Cal.App.4th at p. 510.) *Dalrymple* held that the same analysis the Supreme Court used in *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498] in a malicious prosecution claim applies to an insurance bad faith claim. The court in *Sheldon Appel* concluded that the trial court had erroneously allowed the jury to determine whether there was probable cause to institute the prior action (the basis of the malicious prosecution action). When "there is no dispute as to the facts upon which an attorney acted in filing the prior action, the question whether there was probable cause to institute the prior action is purely a legal question, to be determined by the trial court on the basis of whether, as an objective matter, the prior action was legally tenable or not." (*Id.* at p. 868.)

The bad faith in *Dalrymple* was alleged to lie in its filing of a lawsuit for declaratory relief. As in *Sheldon Appel*, the institution of litigation must be examined from the viewpoint of a reasonable attorney, and the decision must be reached as to the legal tenability of the action.

Furthermore, the meaning of the terms "occurrence" and "accident" on which the insurer sought declaratory relief was the subject of developing

case law. The court held, as matter of law, that the insurer could not be found liable for bad faith because "insurance law interpreting 'occurrence' and 'accident' terminology was still developing. As we noted in *Opsal* v. *United Services Auto. Assn.*, *supra*, 2 Cal.App.4th at page 1205, where there is a genuine issue as to the insurer's liability under the policy under California law, e.g., created by uncertainties in controlling case law, "bad faith liability cannot be imposed." (*Dalrymple* v. *United Services Auto. Assn.*, *supra*, 40 Cal.App.4th at p. 523.) No such uncertainties in controlling case law are involved in the instant case, for there are no words of art in the policy or endorsement awaiting court interpretation.

The value reporting provision of Filippo's policy reads as follows: "Monthly Reports: 4. The Assured shall keep an accurate record of all property covered under this endorsement and render monthly reports on the 15th day of each month or as soon thereafter as may be practicable of the actual values at risk at each location as of the last day of the previous calendar month and to pay premiums thereon when due at this Company's rates, or if no goods and merchandise are at risk, to render monthly reports marked 'NIL'." As appellants themselves stated in their points and authorities in support of their motion for summary judgment, ". . . the policy allowed Filippo to pay a monthly premium only for the value of the goods actually in its warehouse." The purpose of the report was to establish the premium to be paid. The policy contained no clause warning of consequences of late reporting. Appellants consistently accepted late reports without complaint, and increased coverage by 50 percent when no reports had been filed for three months.

*Opsal* v. *United Services Auto. Assn.*, *supra*, 2 Cal.App.4th 1197, itself is also distinguishable from the instant case. In *Opsal* the court upheld a verdict for breach of insurance contract but found the evidence insufficient on the bad faith cause of action and entered judgment thereon for the insurer. The court based its ruling on dictum in *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395 [257 Cal.Rptr. 292, 770 P.2d 704],[3] raising the possibility of a new type of negligence analysis in construing homeowners

---

[3] "A related issue involves whether courts should distinguish between types of negligence when determining whether a loss caused by negligence is covered under a similar policy. For example, if construction is undertaken on the insured premises for the sole purpose of protecting against the operation of a specifically excluded risk under the homeowner's policy, and that improvement subsequently fails to serve its purpose because it was negligently designed or constructed, the damage to the structure should arguably not be covered. On the other hand, ordinary negligence that contributes to property loss, but does not involve acts undertaken to protect against an excluded risk, may give rise to coverage under an all-risk policy. In other words, at some point, courts may want to distinguish between types of negligence when analyzing coverage in a first party property insurance context. The issue,

insurance policies. The *Opsal* court felt "constrained to say the Supreme Court's footnote suggestion was not 'unreasonable' and provided 'proper cause' to support USAA's denial of coverage." (2 Cal.App.4th at p. 1205.) Thus *Opsal* also fell into the category of cases where controlling case law on the interpretation of insurance policy language was evolving. No such evolution is involved in the instant case.

Malicious prosecution analysis, therefore, appears to be analogous to bad faith insurance cases only in very specific situations. We are aware of no authority under which the present case calls for that analysis. The contrasts between the two torts appear to us of greater significance than the comparisons. Malicious prosecution is a disfavored remedy, is a second law suit arising from the same facts, follows a prior resolution in a party's favor, is potentially susceptible of other forms of redress, and necessarily involves legal knowledge in the evaluation of the defendant's act (the filing of the underlying suit). Nothing disfavors a finding in favor of insurance coverage; it has not been preceded by litigation arising from the same facts; the insured has gained nothing from prior litigation; the insured has no other potential redress; legal knowledge is not necessarily required to evaluate the reasonableness of an insurer's actions in denying coverage. (See *Sheldon Appel Co. v. Albert & Oliker, supra,* 47 Cal.3d at p. 872.)

The federal cases cited by appellants are also distinguishable. The procedural history of *Aceves* v. *Allstate Ins. Co.* (9th Cir. 1995) 68 F.3d 1160 is completely different from that of the instant case. Judgment was entered for the insurance company on a claim of bad faith following a court trial and was upheld on appeal. The right to appeal had therefore been preserved.

In *Lunsford* v. *American Guarantee & Liability Ins. Co.* (9th Cir. 1994) 18 F.3d 653, the trial court found the policy, which promised to defend against malicious prosecution, did not include a duty to defend against an abuse of process claim and granted summary judgment in favor of the insurer. Because it found no duty to defend, it also found in the insurer's favor on the claim for bad faith. This ruling was reversed on appeal and the insured asked that the case be remanded for trial on the bad faith cause of action. However, the appellate court, on its own initiative, decided the bad faith claim, holding that the insurer had acted reasonably in its construction of the policy and in its investigation. The appellate court in *Filippo I* took no such action. If it had, there would have been a right to appeal to the highest court.

Again in *Safeco Ins. Co. of America* v. *Guyton* (9th Cir. 1982) 692 F.2d 551 the trial court decided coverage in the insurer's favor and decided the

however, was not raised in the present case, and we do not address it here." (*Garvey* v. *State Farm Fire & Casualty Co., supra,* 48 Cal.3d at pp. 408-409, fn. 7.)

bad faith action similarly. Both issues were specifically before the appellate court, which reversed the coverage decision but affirmed the bad faith ruling. Here again, the right to appeal had been preserved and exercised.

There is a parallel between appellants' argument in this case and that advanced by the insurance companies in *Mullen* v. *Glens Falls Ins. Co.* (1977) 73 Cal.App.3d 163 [140 Cal.Rptr. 605] and *Amato* v. *Mercury Casualty Co.* (1997) 53 Cal.App.4th 825 [61 Cal.Rptr.2d 909]. In each of these cases, the insurer refused to defend because it believed there was no coverage. In each case, that belief was vindicated at trial but it was found that, at the time of the coverage decision, there had been a potential for recovery. The court in *Mullen* made the issue clear: "[M]ay an insurance company, without making an investigation of any kind, deny an insured a defense at a time when it has reason to believe that there is a potential liability under the insurance policy, and then rely upon the results of the personal injury lawsuit and subsequent factors to prove that there was in reality no potential liability in the first instance? [¶] We believe that public policy alone mandates a negative answer to the question; otherwise an insurance carrier could refuse to defend its insured on the slightest provocation and then resort to hindsight for the justification." (73 Cal.App.3d at p. 173.)

This reasoning was adopted and applied in *Amato* where the court held that the insurer "cannot rely on hindsight that a subsequent lawsuit establishes noncoverage." (*Amato* v. *Mercury Casualty Co.*, *supra*, 53 Cal.App.4th at p. 833.)

It is reliance on hindsight that appellants seek to impose on this court. We, too, believe that public policy mandates that the reasonableness of the insurer's decision must be evaluated as of the time it was made, and that no subsequent court ruling can be the justification for the decision.

Appellants argue that the trial court's ruling is presumptively reasonable and establishes that their interpretation of the policy created a genuine issue. If this were the case, there could be no question of bad faith. Such a presumption would have the practical effect of denying the insured its right to appeal the trial court ruling because, even if the trial court were reversed, the initial finding would preclude bad faith as a matter of law. We find that such a conclusion in the insurance context, where legal knowledge is not a prerequisite, is unfounded.

We certainly have great faith in the sagacity and reasonableness of trial judges, but we decline to impute infallibility to any court, trial or appellate.

There is no guarantee that a judge might not be faced with a complicated summary judgment motion on his/her first day in a civil assignment. What trial judge has not been confronted with a motion that has been mislaid till the morning of the hearing? How many wise judges have a placard strategically placed reminding them "Don't say anything stupid today"? Mistakes happen, but *Sheldon Appel* does not provide that a mistake should automatically result in depriving an insured of its right to appeal the dismissal of its claim of bad faith.

We hold that the trial court did not err in denying appellants' motion *in limine* to preclude the jury from hearing evidence of their denial of coverage for goods in excess of the last pre-fire inventory and warehouse report. Such evidence therefore contributes to the sufficiency of the evidence to uphold the verdict.

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. *Can McGee as Agent for a Disclosed Principal Be Found Liable as Principal?*

■ " 'Where an agent is duly constituted and names his principal and contracts in his name and does not exceed his authority, the principal is responsible and not the agent.' [¶] This view has been adopted in California. Where the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent. [Citations.]" (*Lippert* v. *Bailey* (1966) 241 Cal.App.2d 376, 382 [50 Cal.Rptr. 478].)

In *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566 [108 Cal.Rptr. 480, 510 P.2d 1032], the plaintiff, following denial of coverage, sued the three insurance companies with which he had policies, the corporation which had been employed to investigate and adjust the claim, the individual adjuster, the attorneys for the insurance companies, and an individual attorney of that firm. The plaintiff's one cause of action was for the breach of the duty of good faith and fair dealing implied in the insurance contract.

The court sustained demurrers as to all defendants that were the agents or employees of the insurance companies. The court emphasized that the sustaining was because the plaintiff had sued only on the theory of breach of the duty of good faith and fair dealing, and no other. "Obviously, the non-insurer defendants were not parties to the agreements for insurance;

*See footnote, *ante*, page 1429.

therefore, they are not, as such, subject to an implied duty of good faith and fair dealing. Moreover, as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy. [Citation.] This rule, . . . 'derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged.' [Citation.]" (9 Cal.3d at p. 576.) It is clear, therefore, that an agent cannot be held liable for breach of a duty which flows from a contract to which he is not party.

■ The causes of action in the instant case are for breach of contract and bad faith. The bad faith claim necessarily rests upon a contract. The only contract in the lawsuit is the insurance policy. Sun was a disclosed principal and subject to liability for its agent's actions and it is not disputed that McGee was the agent for Sun. Thus McGee cannot be held liable for Sun's breach of the contract and concomitant duty of good faith.

Respondent argues that McGee can be held liable under *Delos* v. *Farmers Insurance Group* (1979) 93 Cal.App.3d 642 [155 Cal.Rptr. 843]. *Delos* held that, under Insurance Code section 790.03, subdivisions (a) through (h), a cause of action could be stated against the management group of an insurance exchange even when the group itself was not a party to the contract. (93 Cal.App.3d at p. 653.) Subsequent to *Delos*, the Supreme Court held that there was no right of private action under Insurance Code section 790.03 so it is questionable if the basis for *Delos* still exists. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58].)

The plaintiffs in *Delos* sued Farmers Insurance Exchange (the Exchange) and Farmers Insurance Group (the Group) for failure to pay claims based on breach of the implied duty of good faith and fair dealing. The Exchange was an interinsurance exchange defined in Insurance Code section 1303 as a specific type of entity.[5] The record in the instant case is devoid of evidence showing that Sun was an interinsurance exchange.

The rationale for the decision in *Delos* that the Group could be found liable even though not a party to the contract was that the insured would be without redress unless it could sue the Group. "If we were to accept the Group's argument and adhere to the general rule that 'bad faith' liability

---

[5]Insurance Code section 1303. "The organization under which such subscribers so exchange contracts is termed a reciprocal or interinsurance exchange, and shall be deemed the insurer while each subscriber shall be deemed an insured."

may be imposed only against a party to an insurance contract, we would not only permit the insurer to insulate itself from liability by the simple technique of forming a management company, but we would also deprive a plaintiff from redress against the party primarily responsible for damages." (93 Cal.App.3d at p. 652.) Thus, although it is true, as respondent suggests, that the functions of the management group in *Delos* were similar to those performed by McGee, and that McGee received percentages of premiums in consideration of its services, McGee is not the only entity from which respondent can obtain redress. There is no evidence that he was anything other than an agent. The exception to the general rule which the *Delos* court found necessary to apply thus does not exist in this case.

As in *Richardson v. GAB Business Services, Inc.* (1984) 161 Cal.App.3d 519 [207 Cal.Rptr. 519], any extension of the class of insurers is a matter for the legislature and not for this court.

Respondent urges us to find, in the alternative, that the relationship between McGee and Sun was that of joint venturers, and that this is a viable basis for a charge of breach of contract sufficient to uphold a breach of the duty of good faith and fair dealing. Whether a partnership or joint venture exists is primarily a factual question to be determined by the trier of fact from the evidence and inferences to be drawn therefrom. (*Bank of California v. Connolly* (1973) 36 Cal.App.3d 350, 365 [111 Cal.Rptr. 468].) Respondent put on no evidence of such a business relationship, requested no jury instructions on the issue, and sought no jury finding on it. There is thus no alleged error in the trial court, nor any question of law for this court to review. Furthermore, respondent's pleadings characterize McGee as agent. The complaint alleges that "the defendants were agents and employees of each of the remaining defendants and were acting within the purpose and scope of said agency and employment. The exact terms and conditions of the employment and agency relationships are unknown to plaintiff at this time, and when that information is ascertained, leave of Court will be sought to insert the appropriate allegations." We have been directed to no such insertion.

Respondent goes further. In its brief on appeal it asks that, if reversal of McGee's motion for judgment notwithstanding the verdict is granted, we substitute Sun in as liable for the punitive damages awarded against McGee. Failing that, respondent wants a remand on a limited basis to permit retrial of McGee's punitive damage liability on a joint-venture theory, or to retry Sun's punitive damage liability. Here again, nothing was raised in the trial court, we are directed to no action or ruling of the trial court which is claimed to be erroneous, and no legal foundation is suggested on which we

could base such actions. Respondent chose the parties against whom it filed suit and selected its theories. It cannot have a second opportunity just because it does not like the outcome. We deal with the record only and find therein no substantial evidence to support a verdict against the agent McGee. We also find no legal error which requires remand to the trial court.

V. *Did the Trial Court Abuse Its Discretion in Evidentiary or Instructional Rulings?*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

The judgment is affirmed. The order denying judgment notwithstanding the verdict is affirmed as to Sun and reversed as to McGee. Appellants' appeal of order awarding attorneys' fees and to tax costs and respondent's appeal for interest are denied as having been abandoned. Respondent's cross-appeal for a new trial on punitive damages is denied as is its request to substitute Sun in for McGee's punitive damages.

Sun to bear its own costs. Filippo to bear its own and McGee's costs on appeal.

Lillie, P. J., concurred.

**WOODS, J.,** Concurring and Dissenting.—*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

A petition for a rehearing was denied October 18, 1999, and on October 20, 1999, the opinion was modified to read as printed above. Woods, J., was of the opinion that the petition should be granted. The petition of defendants and appellants for review by the Supreme Court was denied January 19, 2000. Chin, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante,* page 1429.