Judgment reversed<br>and cause remanded.

GALLAGHER and ROCCO, JJ., concur.

**DOMBROSKI, Appellant,**

v.

**WELLPOINT, INC. et al., Appellees.**

[Cite as *Dombroski v. WellPoint, Inc.*, 173 Ohio App.3d 508, 2007-Ohio-5054.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 06 BE 60.

Decided Sept. 20, 2007.

510

Robert Palmer and John Tucker, for appellant.

Charles Bean, Robert Webner, and Suzanne Richards, for appellees.

VUKOVICH, Judge.

{¶ 1} Plaintiff-appellant, Kimberly Dombroski, appeals from the decision of the Belmont County Common Pleas Court dismissing her complaint for failure to state a claim against defendants-appellees, WellPoint, Inc., and Anthem Insurance Companies Inc. The issue in this appeal is whether the trial court erred in dismissing the complaint pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. For the reasons stated below, the complaint stated sufficient facts to overcome a Civ.R. 12(B)(6) motion to dismiss. Thus, the

trial court's decision is hereby reversed, and this cause is remanded for further proceedings.

## STATEMENT OF CASE

{¶ 2} In 2000, Dombroski successfully had a cochlear implant implanted in her left ear. In 2005, her doctor determined that she needed a cochlear implant placed in her right ear. At the time of her doctor's 2005 determination, Dombroski was insured by Community Insurance Company ("CIC"), which underwrote the policy. CIC, through Anthem UM Services, Inc. ("AUMSI"), denied coverage for the implantation of the right cochlear implant on the grounds that a bilateral implant was investigational.

{¶ 3} On May 22, 2006, Dombroski filed an amended complaint against CIC and AUMSI. She also sued WellPoint, Inc., and Anthem Insurance Companies, Inc. ("AICI"). (The insurance companies as a group will be referred to as "Anthem.") She set forth claims for breach of the insurance contract, promissory estoppel, and the tort of bad faith. Amended Complaint ¶ 1.[1]

{¶ 4} The complaint alleges that CIC, AUMSI, and AICI are subsidiaries of WellPoint, which controls those subsidiaries so that they have no separate mind, will, or existence of their own. The complaint states that this control over the subsidiaries was exercised in such a manner as to violate the duty of good faith and fair dealings to its Ohio insureds, specifically Dombroski. Amended Complaint ¶ 10.

{¶ 5} Attached to the complaint was the insurance policy, stating that covered services must be medically necessary and not investigational. (Health Certificate M–15 and M–35). The policy defines the terms "medically necessary" and "investigational." (Health Certificate M–16–17 and M–18–19). The complaint asserts that the insurance benefits are administered pursuant to the "medical policies and claims administration policies" that are adopted by Anthem appellees.

{¶ 6} The corporate medical policy declares that a bilateral cochlear implant is investigational. Thus, the complaint contends that "WellPoint through AICI establishes certain 'corporate medical policies,' which it directs its subsidiaries to utilize in the administering, handling and processing of claims under its insurance products throughout the United States." Amended Complaint ¶ 9. AICI's corporate medical policy was the basis for the denial of the right ear cochlear implant. Amended Complaint ¶ 9.

---

1. The promissory-estoppel claim was later dismissed by Dombroski and thus is not at issue in this appeal.

{¶ 7} In response to the complaint, WellPoint and AICI filed very similar Civ.R. 12(B)(6) motions to dismiss, claiming that the complaint failed to state a claim upon which relief could be granted. Specifically, they argued that Dombroski could not prevail on the claim of breach of duty to act in good faith under the insurance contract. They reasoned that without privity of contract between WellPoint, AICI, and Dombroski, Dombroski could not prevail on the breach of the duty to act in good faith under the insurance contract. Second, WellPoint and AICI contended that Dombroski failed to allege a basis for piercing the corporate veil.

{¶ 8} Dombroski countered, alleging that she had pleaded sufficient facts for a breach of duty to act in good faith and to pierce the corporate veil. However, the trial court determined that Dombroski had failed to state a claim upon which relief could be granted. The court dismissed the complaint against WellPoint and AICI. Notably, both CIC and AUMSI are still parties. Dombroski timely appeals.

## ASSIGNMENT OF ERROR

{¶ 9} "Lower court erred in granting appellees WellPoint's and AICI's respective motions to dismiss pursuant to Civil Rule 12(B)(6)."

{¶ 10} To dismiss a complaint for failure to state a claim upon which relief may be granted pursuant to Civ.R. 12, it must be shown beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063. Factual allegations in the complaint will be presumed as true, and inferences will be made in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753. The trial court is not permitted to resort to evidence outside the complaint to support dismissal under Civ.R. 12(B)(6). Attachments to the complaint are not considered to be outside the complaint. *Adlaka v. Giannini*, 7th Dist. No. 05MA105, 2006-Ohio-4611, 2006 WL 2575053, ¶ 34. See Civ.R. 10(C) and (D).

{¶ 11} Appellate review of a trial court's decision to dismiss a complaint on the basis of Civ.R. 12(B)(6) is de novo. *Woods v. Oak Hill Community Med. Ctr.* (1999), 134 Ohio App.3d 261, 267, 730 N.E.2d 1037. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. *Brown v. Scioto Cty. Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. Thus, this court must review the complaint and determine whether Dombroski has stated any claim for which relief could be granted.

{¶ 12} As stated above, the two issues that were raised to the trial court in the motions to dismiss and oppositional memorandum were (1) whether CIC's corporate veil could be pierced to get to WellPoint and AICI and (2) whether the complaint asserted an actionable-bad-faith claim against WellPoint and AICI (which is hereinafter deciphered as a management-theory argument). We will address those two arguments, taking each in turn.

Piercing the Corporate Veil

{¶ 13} As stated above, Dombroski's amended complaint indicates that her insurance contract was underwritten by CIC. The contract states that it is solely between CIC and Dombroski. Dombroski admits that neither WellPoint nor AICI is a party to the insurance contract. She claims that while WellPoint and AICI are not formal parties to the contract, they can be liable for the denial of coverage for the right cochlear implant, if she can pierce CIC's corporate veil.

{¶ 14} "Generally, a parent corporation is not liable for the actions of its subsidiary, even if the subsidiary is wholly owned by the parent corporation." *Wallace v. Shelly & Sands, Inc.*, 7th Dist. No. 04BE11, 2005-Ohio-1345, 2005 WL 678526, quoting *Starner v. Guardian Industries* (2001), 143 Ohio App.3d 461, 468, 758 N.E.2d 270. The reason for this is stated as follows:

{¶ 15} " 'That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded.' " *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075, quoting *State ex rel. Atty. Gen. v. Standard Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279, paragraph one of the syllabus.

{¶ 16} Thus, the corporate entity may be disregarded, and a parent corporation and its subsidiary may be treated as a single entity when the three-prong test set forth in *Belvedere* is established. *Wallace*, 2005-Ohio-1345, 2005 WL 678526, ¶ 37. The tripartite test is as follows:

{¶ 17} "(1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere*, 67 Ohio St.3d 274, 617 N.E.2d 1075, at paragraph 3 of the syllabus.

{¶ 18} Therefore, the *Belvedere* test is equally applicable to piercing a corporation to reach an individual shareholder or owner and to piercing a corporation to reach another corporation. Id. at 287–288, 617 N.E.2d 1075, citing *North v. Higbee Co.* (1936), 131 Ohio St. 507, 6 O.O. 166, 3 N.E.2d 391 (a parent/subsidiary case that the *Belvedere* court cited for two of the *Belvedere* prongs).

{¶ 19} The trial court held, and WellPoint and AICI maintain, that Dombroski did not set forth facts in her complaint that would entitle her to pierce CIC's corporate veil. Civ.R. 8(A) is the relevant rule for pleading requirements, and it merely requires "a short and plain statement of the claim showing that the party is entitled to relief."

{¶ 20} " '[T]he complaint, and other relief-claiming pleadings need not state with precision all elements that give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided. However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.' 5 Wright & Miller, Federal Practice & Procedure: Civil (12969), at 120–123, Section 1216." *Fancher v. Fancher* (1982), 8 Ohio App.3d 79, 83, 8 OBR 111, 455 N.E.2d 1344.

{¶ 21} A party seeking to pierce the corporate veil is not required to relate the specific intention in the complaint in order to proceed under the doctrine of piercing the corporate veil. *Geier v. Natl. GG Industries, Inc.* (Dec. 23, 1999), 11th Dist. No. 98–L–172, 1999 WL 1313640 (explaining that "[p]iercing the corporate veil is not a claim, it is a remedy encompassed within a claim. It is a doctrine wherein liability for an underlying tort may be imposed upon a particular individual"). In other words, there is no requirement that one must state in their complaint that they are "piercing the corporate veil." Id. All that is required is that the complaint contain sufficient information to indicate a desire to proceed under the doctrine of piercing the corporate veil. *Dalicandro v. Morrison Rd. Dev. Co., Inc.* (Apr. 17, 2001), 10th Dist. Nos. 00AP–619, 00AP–656.

{¶ 22} For example, the Tenth District Court of Appeals found that the pleadings were sufficient when the plaintiff was named in his individual capacity and was described as using his company to engage in the alleged conversion and breach of contract. Id. Likewise, the Eleventh District Court of Appeals found that a plaintiff's allegation intending to hold the defendant personally liable for the transfer of property, which was allegedly in violation of the Ohio Uniform Fraudulent Transfer Act, was sufficient to put the defendant on notice that the plaintiff intended to pierce the corporate veil. *Geier*, 11th Dist. No. 98–L–172, 1999 WL 1313640.

{¶ 23} Thus, Dombroski was not required to state the words "pierce the corporate veil" in her complaint. Still, the complaint must contain sufficient information to show the desire to proceed under the theory. As the ability to pierce the corporate veil is defined by *Belvedere*, we will review the complaint to determine what, if any, prongs of *Belvedere* were addressed in the complaint.

{¶ 24} Both parties agree that the complaint clearly alleges that WellPoint controls its subsidiaries to the point that they have no separate mind, will, or existence of their own. The first prong of *Belvedere* is undisputedly established.

{¶ 25} The second prong of *Belvedere* is that control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity. Dombroski does not specifically claim that there was an illegal act or an actual act of fraud. Rather, she maintains that certain acts were unjust or inequitable. Many appellate districts, including ours, have defined the second prong of *Belvedere* as including unjust or inequitable acts. *State v. Tri–State Group, Inc.*, 7th Dist. No. 03BE61, 2004-Ohio-4441, 2004 WL 1882567; *Robert A. Saurber Gen. Contractor, Inc. v. McAndrews*, 12th Dist. No. CA2003–09–239, 2004-Ohio-6927, 2004 WL 2937627; *Dalicandro*, 10th Dist. Nos. 00AP–619, 00AP–656, 2001 WL 379893; *Wiencek v. Atcole Co., Inc.* (1996), 109 Ohio App.3d 240, 245, 671 N.E.2d 1339 (3d Dist.). But see *Collum v. Perlman* (Apr. 30, 1999), 6th Dist. No. L–98–1291, 1999 WL 252725; *Widlar v. Young*, 6th Dist. No. L–05–1184, 2006-Ohio-868, 2006 WL 456724 (describing these holdings as too expansive).

{¶ 26} WellPoint and AICI argue that the allegations contained within the complaint asserted only a breach of contract and that a breach of contract alone is not a sufficient unjust or inequitable act to pierce the corporate veil. The trial court agreed with WellPoint and AICI's argument and thus found that the second prong of *Belvedere* could not be established. It based its decision on *Connolly v. Malkamaki*, 11th Dist. No. 2001–L–124, 2002-Ohio-6933, 2002 WL 31813040.

{¶ 27} The *Connolly* court stated that breach of contract alone is not sufficient to bring a corporation's conduct within the scope of *Belvedere*. Id. The *Connolly* case did not involve a motion to dismiss for failure to state a claim upon which relief could be granted. Rather, in *Connolly*, before submission of the issues to the jury, defendant moved for a directed verdict, claiming that sufficient evidence had not been submitted to pierce the corporate veil. The trial court denied the motion, and the jury returned a verdict in favor of the plaintiff. On appeal, the appellate court held that the directed verdict should have been granted because there was not sufficient evidence to meet the second prong of *Belvedere*. It specifically stated:

{¶ 28} "A simple breach of contract, in the absence of a more substantial factual predicate indicative of some corporate malfeasance, with direct bearing on the plaintiff's injury, is insufficient to meet the second prong of the *Belvedere* test. To decide otherwise, would completely vitiate the holding in *Belvedere*. Therefore, having construed the evidence in the light most favorable to appellee, we conclude that she has failed to identify any portion of the \* \* \* second prong of the *Belvedere* test for piercing the corporate veil." *Connolly,* 2002-Ohio-6933, 2002 WL 31813040, at ¶ 34.

{¶ 29} While *Connolly's* analysis and holding may be sound, it has no application in the case at hand. Reading the complaint in the light most favorable to Dombroski, we must conclude that she is raising more than just a breach-of-contract claim. Dombroski asserts that WellPoint controlled AICI, CIC, and AUMSI to the point that they had no will of their own and that this control violated the duty to act in good faith in handling claims. She contends that WellPoint, AICI, and CIC through AUMSI denied coverage of the right cochlear implant by unjustly claiming that bilateral (but not unilateral) implantation is experimental and investigational. She then discloses that there was an appeal of this ruling but that Anthem's appeal panel consisted of no person with training or expertise in bilateral cochlear implants. Amended Complaint ¶ 23. She discusses that she went through Anthem's appeal process and states that coverage was still denied because bilateral implants were considered experimental and investigative under the corporate medical policy despite her having satisfied the medically necessary criteria. She concludes, "Defendants' conduct was oppressive, insulting and was undertaken knowingly, intentionally, willfully, with malice, and in conscious disregard of her rights knowing there was a great probability of harm to her." Amended Complaint ¶ 35.

{¶ 30} While the complaint's allegations do sound in breach of contract, it is also clear that Dombroski is asserting that Anthem (WellPoint, AICI, AUMSI, and CIC) failed to act in good faith in handling her claims and thus acted in bad faith. Most specifically, she claims that WellPoint's control over its subsidiaries was "exercised in such a manner as to violate an insurer's duty of good faith and fair dealing to its Ohio insureds." Amended Complaint ¶ 10.

{¶ 31} It has been held by the Ohio Supreme Court that the breach of the duty to act in good faith in handling claims is a cause of action sounding in tort:

{¶ 32} "Based upon the relationship between an insurer and its insured, an insurer has the duty to act in good faith in the handling and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort against the insurer." *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio

St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus. See, also, *Motorists Mut. Co. v. Said* (1992), 63 Ohio St.3d 690, 694, 590 N.E.2d 1228.

{¶ 33} Consequently, the complaint asserts more than a breach-of-contract claim; it also asserts the tort of a duty to act in good faith as defined by the Ohio Supreme Court. The failure of the duty to act in good faith in handling claims constitutes an unjust or inequitable act for purposes of pleading piercing the corporate veil. Therefore, the second prong of *Belvedere* was sufficiently pleaded.

{¶ 34} In order to meet the third prong of *Belvedere*, Dombroski must allege that an injury or unjust loss resulted from the aforementioned "control and wrong." *Belvedere*, 67 Ohio St.3d 274, 617 N.E.2d 1075, paragraph 3 of the syllabus. In the complaint, she alleges that she has suffered physical loss, pecuniary loss, emotional distress, impaired earning capacity, and lessened likelihood of a successful working implantation of a future right cochlear implant. She alleges that these injuries have resulted from the "control and wrong" by WellPoint through its subsidiaries due to the corporate medical policy. This is sufficient to meet the third prong of *Belvedere*.

{¶ 35} Despite WellPoint and AICI's arguments, Dombroski did not need to assert that CIC was undercapitalized (underfunded) to sufficiently plead facts for piercing the corporate veil. Undercapitalization is just one of the factors that a court can consider in deciding whether the corporate fiction should be disregarded. *Lewis v. DR Sawmill Sales Inc.*, 10th Dist. No. 04AP–1096, 2006-Ohio-1297, 2006 WL 701140 (using underfunding to address the second element of *Belvedere*); *Cremeans v. Robbins* (June 12, 2000), 4th Dist. No. 99CA2520, 2000 WL 781215; *Willoway Nurseries v. Curdes* (Oct. 13, 1999), 9th Dist. No. 98CA007109, 1999 WL 820784; *State ex rel. Montgomery v. Fisher Acquisition & Dev. Corp.* (July 24, 1998), 6th Dist. No. L–97–1411, 1998 WL 421632; *Wiencek*, 109 Ohio App.3d at 245, 671 N.E.2d 1339 (use of the factor for determination of the *Belvedere* test); *Fesman v. Berger* (Dec. 6, 1995), 1st Dist. No. C–940400, 1995 WL 714265 (factors used to determine all principles of *Belvedere*); *Dirksing v. Blue Chip Architectural Prods. Inc.* (1994), 100 Ohio App.3d 213, 226, 653 N.E.2d 718; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 744, 607 N.E.2d 1140. In other words, it is one factor the court may consider when determining whether the *Belvedere* tripartite test is met. Other factors include but are not limited to the observance of corporate formalities or lack thereof, the presence of fraud, and the existence of any unjust or inequitable consequences arising from the retention of the corporate fiction. *Link*, 79 Ohio App.3d at 744, 607 N.E.2d 1140; *Fesman*, 1st Dist. No. C–940400, 1995 WL 714265.

{¶ 36} Therefore, Anthem's recitation of the *Belvedere* test as including underfunding as an element of the tripartite test is incorrect. Contrary to Anthem's contentions, Dombroski was not required to plead undercapitalization to show any one element of the *Belvedere* test. All Dombroski was required to do was to plead facts sufficient to put Anthem defendants on notice that she was attempting to pierce the corporate veil.

{¶ 37} In conclusion, after reviewing the complaint in the light most favorable to Dombroski, the nonmoving party, we find that she pleaded sufficient facts to put the Anthem defendants on fair notice that she was attempting to pierce the corporate veil. Whether or not she can prove the elements of piercing the veil to the requisite degree is a wholly different question that is not at issue at this stage. The trial court erred in dismissing the complaint on that basis.

{¶ 38} Having found that, we acknowledge that Dombroski's argument for reversal of the trial court's decision also focuses on a request for relaxation of the privity doctrine. As mentioned, Dombroski admits that neither WellPoint nor AICI is a formal party to the insurance contract. Furthermore, she acknowledges that in order to pursue the breach of duty to act in good faith in handling claims, there must be privity of contract. *Hoskins*, 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus (stating that the tort is based upon the relationship between the insurer and insured). It appears, based on her argument, that Dombroski believes that her claim for the failure to act in good faith in handling claims cannot be pursued unless the doctrine of privity is relaxed.

{¶ 39} Dombroski's belief is mistaken. Privity does not need to be relaxed in order to find that the complaint stated a claim upon which relief could be granted. Privity between Dombroski, WellPoint, and AICI will be established if CIC's corporate veil is pierced. As stated above, the complaint asserts that WellPoint controlled its subsidiaries to the point that they had no mind or control of their own and that WellPoint functions as an insurance company for its subsidiaries. Furthermore, it is also asserted that the handling, processing, and denying of Dombroski's claims was not reasonably justified and was not handled in good faith. Thus, if she can prove as she claims that WellPoint controls CIC to the point that it has no separate mind, that the denial of her claim was in bad faith, which was an unjust act, and that she was damaged by this, then she could pierce the veil and show that it is really WellPoint that acted in bad faith. In other words, there could be privity with WellPoint if it is dictating every decision its subsidiaries are issuing, since it would be the one actually fulfilling or failing to fulfill the duties under the insurance contract.

{¶ 40} The Ohio Supreme Court has implicitly indicated that when a lack of privity is asserted as a defense by a parent company, the way to establish privity

is through piercing the corporate veil. *Dardinger v. Anthem Blue Cross & Blue Shield,* 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121. In *Dardinger,* AICI and CIC, d.b.a. Anthem Blue Cross & Blue Shield, were sued for, among other things, breach of contract and bad faith in handling the claims. A jury found them liable. AICI filed a motion for judgment notwithstanding the verdict. In the motion, AICI attempted for the first time to distinguish itself from CIC and argue that there was no contract between itself and the insured. The trial court found that the argument was waived. Additionally, it concluded that AICI could be found liable under an alter-ego theory because of its domination and control of its subsidiary. However, the appellate court reversed and found that AICI had no contractual obligations with the insured and thus it could not be liable. The appellate court also rejected the trial court's finding that AICI could be found liable under an alter-ego theory.

{¶ 41} On review, the Ohio Supreme Court agreed with the trial court and found that AICI had waived its argument that there was no contract between itself and the insured. It stated that in the trial court proceedings, prior to the motion for judgment notwithstanding the verdict, AICI made no attempt to distinguish itself from CIC. It further added:

{¶ 42} "Had AICI raised its defense [lack of privity] in a timely manner, Dardinger could have introduced evidence opposing it. The trial court, in addition to finding waiver, also found that Anthem was 'so dominated and controlled [by AICI] that it is no more than a paper existence.' Dardinger could have sought to pierce the corporate veil in the prosecution of his case had the issue been in play." Id. at ¶ 147.

{¶ 43} Consequently, when the parent corporation is not a party to the insurance contract, privity is established when the subsidiary's corporate veil is pierced. The doctrine of privity does not need to be relaxed in this situation. Dombroski's assertion to the contrary is incorrect. Regardless, as explained above, the trial court's decision requires reversal; the complaint did state a claim upon which relief could be granted.

{¶ 44} Although our analysis requires reversal, in fairness, we will address Dombroski's remaining argument due to its likelihood of being raised at the trial court upon remand.

### Management Theory

{¶ 45} Dombroski's second argument is that she can pursue an action for failure to act in good faith in handling her claim against WellPoint and AICI even if no privity of contract can be established through piercing the corporate veil. She acknowledges that the issue is one of first impression in Ohio, and she cites cases from other states that she interprets as having extended the bad-faith claim

when there is no privity of contract or piercing of a veil. She refers to the doctrine as a "bad faith" theory of recovery.

{¶ 46} As we have explained above, the breach of duty to act in good faith (i.e. bad faith) in handling claims can be pursued under a theory of piercing the corporate veil. In order to avoid confusion with the lack-of-good-faith theory, we use the terms management theory or delegation theory hereinafter. As will be shown below, these terms are more accurate.

{¶ 47} The first case she points this court to is *Delos v. Farmers Ins. Group, Inc.* (1979), 93 Cal.App.3d 642, 155 Cal.Rptr. 843. In that case, there were two insurance companies, Farmers Insurance Exchange ("the Exchange") and Farmers Group, Inc. ("the Group"). The Group described itself as the management organization for the Exchange. It further explained in simple terms that for legitimate business consideration, the Group was formed to render management services for the Exchange, for which it received a percentage of premiums paid by the Exchange's policyholders. In order for this relationship to work, every policyholder of the Exchange was required to appoint the Group as attorney in fact.

{¶ 48} This type of relationship was described as an interinsurance exchange and its attorney in fact. A formal description of this type of relationship is as follows:

{¶ 49} "A reciprocal insurance exchange * * * is an unincorporated business organization of a special character in which the participants, called subscribers (or underwriters) are both insurers and insureds; for their mutual protection, they exchange insurance contracts through the medium of an attorney-in-fact, empowered in each underwriters agreement not only to exchange insurance contracts for the subscribers, but also to exercise all other functions of an insurer, e.g., to set rates, to settle losses, to compromise claims, to cancel contracts. The subscribers furnish by their premium deposits, the means required for losses and costs, reserves and surpluses of the reciprocal insurance of them all, and therefore are entitled to the equity in the assets of the Exchange subject to the purpose for which they have furnished said means. If the amount of premiums deposited is not fully required for the purposes mentioned, the excess, called savings, is returned in whole or in part as dividends. The attorney-in-fact receives a sizable percentage of the premiums deposited in consideration of which he does not only provide his own services, but also has to defray many of the costs of the business." Id. at 652, 155 Cal.Rptr. 843.

{¶ 50} The vice-president of the Group explained the relationship of the Group and the Exchange in simpler terms than the above definition:

{¶ 51} " '[I]f it were small enough, they [the policyholders] would just get together from time to time and put money in a big barrel and take the money out of the big barrel for claims purposes. Since it is three and a half, four million people, it is not practical. A management company or an attorney-in-fact is appointed to handle all of those monetary and other affairs to see that the property is properly accepted and properly disbursed and properly accounted for.' " Id., 93 Cal.App.3d at 651–652, 155 Cal.Rptr. 843.

{¶ 52} One of the Exchange's policy holders, Delos, was injured in an automobile accident caused by an uninsured motorist. Delos sought uninsured-motorist coverage from the Exchange. After it denied coverage, Delos sued both the Exchange and the Group for the breach of the implied covenant of good faith and fair dealing in handling the claim. The Group asserted that it was not a party to the insurance contract and thus could not be sued because of lack of privity. The California appellate court disagreed with their argument. It stated:

{¶ 53} "If we were to accept the Group's argument and adhere to the general rule that 'bad faith' liability may be imposed only against a party to an insurance contract, we would not only permit the insurer to insulate itself from liability by the simple technique of forming a management company, but we would also deprive a plaintiff from redress against the party primarily responsible for damages. We conclude the Group is liable for the breach of the implied covenant of good faith and fair dealing." Id., 93 Cal.App.3d at 652, 155 Cal.Rptr. 843.

{¶ 54} Thus, in *Delos*, while there was no privity of contract between the Group and the injured party, the Group managed the Exchange's "monetary and other affairs." On that basis, the court allowed the bad faith claim. This is management theory. Or in other words, when one insurance company hires or forms another company to manage it, the management company can be held liable because it is assuming the duties of the insurance company. In all actuality, the insurance company is delegating its rights under the contract to the company it hires/forms to manage it. It was this delegation that created the right to sue.

{¶ 55} *Delos* was later limited by a California appellate court. *Filippo Industries, Inc. v. Sun Ins. Co. of New York* (1999), 74 Cal.App.4th 1429, 88 Cal.Rptr.2d 881. Part of the reason for limiting the Delos holding was that the California Supreme Court had made a ruling that there was no right of private action under a section of the California insurance code. The appellate court then stated that it was "questionable if the basis for Delos still exists." Id. Thus, the appellate court limited the holding in Delos to its specific facts and the situation where "the insured would be without redress unless it could sue the Group." Id.; *Salido v. Allstate Ins. Co.* (N.D.Cal.1999), No. C98-04616CRB, 1999 WL 977944.

{¶ 56} Regardless, other states have also recognized this management theory as a basis for liability when there is no privity of contract and as an alternative to

using the doctrine of piercing the corporate veil. See *Dellaira v. Farmers Ins. Exchange* (2004), 136 N.M. 552, 102 P.3d 111 ("[w]e conclude that Plaintiffs stated a claim for breach of duty to act in good faith, and that, under some state of facts, relief might possibly be granted. Because the matter before us is one of first impression, we do not fault the district court in following the usual doctrine of lack of contractual privity"); *Gatecliff v. Great Republic Life Ins.* (1991), 170 Ariz. 34, 821 P.2d 725 (recognizing a direct liability/management theory and explaining that " '[u]nder these circumstances, strict adherence to the general rule that liability for bad faith breach may be imposed only against a party to an insurance contract would permit Farmers to shield itself from liability through the device of a management company' "); *Williams v. Farmers Ins. Group, Inc.* (Colo.App.1989), 781 P.2d 156, quoting *Farmers Group, Inc. v. Trimble* (Colo. App.1988), 768 P.2d 1243, 1247.

{¶ 57} All of these cases represent a recognition of the management or delegation theory. As mentioned, management theory works when one company forms another company to manage it or its claims, or it hires another company to manage it or its claims. When these actions are taken, the cited courts hold that the manager is undertaking the duties and liabilities of the insurer under the insurance contract.

{¶ 58} The New Mexico *Dellaira* opinion concisely explains the idea of holding a party that is not in privity to the contract liable for failing to fulfill the duty of good faith and fair dealing to the insured. *Dellaira*, 136 N.M. 552, 102 P.3d 111. It held that an "entity owed a duty of good faith and fair dealing to the insured, even where no privity of contract existed between the two, because the entity 'had primary control over benefit determinations, assumed some of the insurance risk of loss, undertook many of the obligations and risks of an insurer, and had the power, motive, and opportunity to act unscrupulously in the investigation and servicing of insurance claims.' " Id. at ¶ 12, quoting *Cary v. United of Omaha Life Ins. Co.* (Colo.2003), 68 P.3d 462, 463. It further stated that many other cases have had similar results under analogous circumstances.

{¶ 59} The *Dellaira* court also outlined its reasoning for allowing such an action to go forth even when there is no privity. The court recognized the special and unique relationship between insurer and insured, which includes "the inherent lack of balance in and adhesive nature of the relationship as well as the quasi-public nature of insurance and the potential for the insurer to unscrupulously exert its unequal bargaining power 'at a time when the insured is particularly vulnerable.' " (Citation omitted.) Id. at ¶ 14, quoting *Wolf v. Prudential Ins. Co. & Am.* (C.A.10, 1995), 50 F.3d 793, 797. The court then pointed out that an entity that controls the claim-determination process, such as a parent corporation or a managing corporation, may have an incentive similar to that of an unscrupulous

insurer to delay payment or coerce an insured into a diminished settlement. Since the entity acts as insurer, it should be bound within the special relationship created through the insurance contract. It then clarified that "[a]n insured's expectations of good faith handling and ultimate determination of his or her claim for benefits by the insurer extends no less to an entity that both handles and determines the claim than to the insurer issuing the policy." Id.

{¶ 60} We find the above reasoning logical and persuasive. Thus, if the allegations of the complaint allege a management theory scenario, then the action could be pursued against the defendants for whom the theory applies.

 {¶ 61} That said, the allegations in the complaint do not attribute to WellPoint and AICI the actions associated with the management theory. First, addressing AICI, the complaint alleges that "WellPoint through AICI establishes certain 'medical policies.'" The corporate medical policy dealing with cochlear implants is attached to the complaint. It provides criteria for determining whether cochlear implants are medically necessary. The policy provides rationale, overview, background information, and citations. At the end, it opines that bilateral implants are investigational. The insurance contract underwritten by CIC states that investigational procedures are not covered.

{¶ 62} AICI is not asserted to be a managing company. It is merely providing definitions, criteria, etc., and generally determines whether a particular medical procedure should be defined as investigational. It does not determine specific coverage or review individual claims for CIC or otherwise manage its operations or claims process. Thus, it has not been alleged to fit under the management theory.

{¶ 63} An easier way to explain why it cannot be sued for making definitions is by example. An insurance company could hire an outside source to come up with its medical policy, such as the American Medical Association ("AMA"). However, the AMA could not be liable for merely providing the insurance company a medical opinion, which the insurance company uses, on what is investigational.

{¶ 64} As to WellPoint, the complaint alleges that it is the parent and that it controls its subsidiaries to the point that they have no separate mind or will of their own. These types of allegations are typical allegations for piercing the corporate veil. There is no allegation that CIC hired or formed WellPoint to manage it or its claims or that CIC delegated such responsibility to WellPoint. The allegations are that WellPoint is the one that controlled the others to the point that it is claimed that they are really one entity. Thus, the allegations do not fit in the typical management theory; rather, they fit under piercing-the-corporate-veil theory.

{¶ 65} Therefore, Dombroski has not alleged sufficient facts to show that she can pursue WellPoint and AICI under the management theory. The trial court, however, held that "delegation theory is superseded by the test for piercing the corporate veil." We cannot allow this statement to stand. Although we held that the management/delegation theory has not been alleged to apply to WellPoint or AICI, it may apply in proper cases or against proper parties. AUMSI issued the denial here, and thus plays a direct part in managing CIC's claims. However, since AUMSI is not a party before us, we refrain from passing further judgment on AUMSI's status at this time.

{¶ 66} Dombroski also makes what she sees as a separate contention under her bad faith argument that privity can be established due to a delegation of duties. She cites the following example in the Restatement for support:

{¶ 67} "A, a corporation, contracts with B to build a building. A delegates the entire performance to X and Y, the sole stockholders of A. Performance by X and Y in accordance with specifications discharges A's duty, since the supervision is not materially changed." 3 Restatement of the Law 2d, Contracts, Section 318, Illustration 8.

{¶ 68} As set forth above, the management theory cases are synonymous with her delegation argument. For instance, when a corporation hires or forms a company to manage it or its claims, it in actuality is delegating its rights under the contract to the managing company. Thus, delegation is similar to the management theory that other state courts are using. Both companies, the managing company and the company being managed, would be liable. Thus, her second argument is merely a reiteration of the first argument.

{¶ 69} Lastly, we forgo discussion of Dombroski's alternative theories that are merely listed in her brief without citation or argument. The arguments as to these alternative theories fail to comply with App.R. 16(A)(7). The record further discloses that none of these arguments were raised to the trial court. Moreover, we have already determined that the complaint states a claim upon which relief could be granted.

## CONCLUSION

{¶ 70} In conclusion, when viewed in the light most favorable to Dombroski, the complaint contains sufficient facts for pleading the doctrine of piercing the corporate veil and the establishment of privity. Each of the three prongs of *Belvedere* was alleged. Thus, the trial court's decision to dismiss the complaint is reversed, and this cause is remanded to the trial court for further proceedings.

As to Dombroski's bad faith argument, which is better labeled as management theory, she cannot pursue these claims against WellPoint and AICI.

Judgment reversed<br>
and cause remanded.

DeGenaro, P.J., and Donofrio, J., concur.