Filed 5/13/26  Rafiee v. Dangoor CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| RAFI RAFIEE, | B346022 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 20STCV43794) |
| v. | |
| DANIEL DANGOOR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Reversed.

Sam Vahedi & Associates and Sam Vahedi for Defendant and Appellant.

Ashour Yehoshua, Ashkan Ashour and Edward Y. Chau for Plaintiff and Respondent.

_____

Daniel Dangoor, a licensed real estate salesperson working for the sellers' "real estate broker and listing agent," Coldwell Banker Realty, appeals from a judgment entered against him for $18,500 in damages on a breach of contract claim brought by the buyer, Rafi Rafiee. After a bench trial, the trial court concluded Dangoor was personally liable on the contract notwithstanding that Dangoor did not personally make promises to Rafiee, that he was not a signatory to the contract, that he was not identified as a party to the contract, and that the court found he was acting in the scope of his agency to the sellers. We reverse and remand.

**FACTUAL AND PROCEDURAL BACKGROUND**

Dangoor does not challenge the trial court's factual findings. We therefore accept the facts as established in the trial court's Statement of Decision.

A.  *The Transaction*

In August 2020 Rafiee submitted an offer to purchase a single-family residence at 948 Thayer from Morad and Nahid Golcheh on a standard California Association of Realtors Residential Purchase Agreement (RPA). At the time Rafiee visited the residence for the initial showing, the residence was furnished with items owned by the Nightfall Group, the sellers' short-term-rental tenant. After some negotiation, the sellers responded with Seller Counter Offer No. 2, which added the operative provision at the center of this appeal: "Furniture at showing or equivalent to be included by Listing Agents, not Seller."

Dangoor was one of three licensed real estate salespersons working for the sellers' "real estate broker and listing agent,"

2

Coldwell Banker Realty. Dangoor and his co-salespersons, Iman and Mina Eshaghyan, "came to an agreement with the sellers that the cost of the furniture would be deducted from the commission owed by the sellers to the listing agents" rather than being an additional charge to the sellers. One of sellers' salespersons informed Rafiee that the exact furniture present at the initial showing might not be available, because it belonged to the Nightfall Group, and that an "equivalent" set from another Nightfall Group short-term-rental property would be provided. Rafiee accepted Seller Counter Offer No. 2.

Rafiee visited the residence multiple times during the 17-day inspection contingency period. On one such visit, Rafiee observed that the showing furniture had already been removed. The sellers' salespersons explained that the sellers could not obtain the same furniture set and that an equivalent set from the Nightfall Group would be delivered. They further explained that the piano and pool table still at the residence were not considered "furniture" and had never been part of the deal. Rafiee "knowingly waived his inspection contingency and proceeded with the purchase of the home."

In October 2020 Dangoor sent Rafiee photographs of the replacement furniture via WhatsApp and advised that the pieces were being prepped for delivery. Rafiee responded that he did not "really like anything from [this batch]" and expressed hope that a different set would be available. Dangoor explained the replacement furniture had come from another Nightfall Group property and invited Rafiee to inspect it in person before it was disassembled for delivery. Rafiee declined the inspection and stated, "This is not equivalent to the furniture that was in the house."

B.   *The Litigation and the Trial*

Rafiee filed his complaint in November 2020. After the trial court granted summary judgment in favor of the Golcheh sellers and approved a $10,000 good-faith settlement with all the other defendants, Dangoor proceeded as the sole remaining defendant through a bench trial in September 2024. Dangoor and Rafiee testified. In addition, expert Brett Baer testified that "furniture" was a term of art in real estate and included chairs, tables, beds, sofas, desks, and the like but did not include pianos, pool tables, televisions, or similar items. Witness Michael Brushin, who purchased and inventoried both sets of furniture, provided the valuation evidence the trial court ultimately adopted: the furniture at showing was worth $5,950, and the replacement furniture Rafiee received was worth $7,800.

At the close of Rafiee's case-in-chief, Dangoor moved for judgment under Code of Civil Procedure section 631.8. The court granted the motion on the intentional misrepresentation and unjust enrichment causes of action and denied the motion on the breach of contract cause of action. After the parties submitted written closing briefs and the trial court issued a tentative ruling, the trial court adopted Dangoor's proposed statement of decision in full.

C.   *The Statement of Decision and the Judgment*

The trial court made the following express findings pertinent to this appeal:

- "Dangoor was not a signatory to the RPA."
- "[T]he RPA, including the Counteroffers incorporated therein, constitute the contract at issue," and "No other contract between the parties, written or oral, is in evidence."

4

- "[T]he RPA is an integrated contract."
- "Dangoor did not personally make promises to Rafiee regarding furniture in connection with the Transaction."

On the furniture valuations, the trial court found the furniture at showing had a reasonable value of $5,950, and the replacement furniture Rafiee received had a reasonable value of $7,800. Notwithstanding the higher dollar value, the court further found that the replacement furniture was "not 'equivalent'" to the furniture at showing.

Concerning liability for breach of contract, the trial court stated: "The RPA provides that 'brokers' are excluded from the contract. However, because Dangoor is a Real Estate Salesperson acting as an agent for RE Broker Group and not a 'Broker,' the Court finds that Dangoor owed a contractual duty to Rafiee to ensure that the promise made in the RPA regarding furniture [was] fulfilled. The RPA specifically states that the furniture is to be 'Included by Listing Agents, not Seller.' Therefore, it is implied that Dangoor and Rafiee were in contractual privity. Accordingly, Dangoor had a duty to ensure that Rafiee received equivalent furniture to that at showing. The Court further finds that, while Dangoor was acting in the scope of his agency for the sellers in the subject real estate transaction when communicating promises regarding furniture, those promises memorialized in the RPA are binding on Dangoor personally for this reason."

On damages, the trial court quoted Civil Code sections 3300 and 3301 and then stated the entirety of its damages ruling in one sentence: "Based upon the evidence identified above, the Court finds that Rafiee suffered damages for Dangoor's breach of contract totaling $18,500."

5

Judgment was entered on January 10, 2025, and subsequently amended on April 30, 2025, to reflect the $10,000 good-faith-settlement credit, producing a net award of $8,500.  Dangoor appealed.

## DISCUSSION

Dangoor's primary argument is that the trial court erred in imposing contractual liability on him.

A.  *Applicable law and standard of review*

Dangoor argues that he does not challenge any of the trial court's factual findings and the contract issue is a pure question of law:  whether the court's legal conclusion of personal contract liability can be reconciled with its own findings and with controlling California law.  Rafiee does not dispute that contract interpretation is "solely a judicial function" if there are no facts in dispute.  Regarding the contract interpretation issue, we discern no factual disputes and so address the question of law.  Questions of law are reviewed de novo.  (*Scheenstra v. California Dairies, Inc.* (2013) 213 Cal.App.4th 370, 391 [contract interpretation on undisputed facts reviewed independently].)

B.  *Dangoor Is Not Liable for Breach of Contract*

Dangoor argues that the court's factual findings "eliminate, as a matter of law, any possibility that Dangoor owed contractual obligations to Rafiee under the RPA."  We agree.

First, the court found that "the RPA, including the Counteroffers incorporated therein, constitute the contract at issue."  The court noted that "Rafiee testified that the only agreement between him and any of the defendants concerning furniture is embodied in Trial Exhibit 40 – Seller Counter

6

Offer 2, which is a part of the RPA between the buyer (Rafiee) and the sellers. . . .  No other contract between the parties, written or oral, is in evidence."  In addition, "the RPA is an integrated contract because it provides that 'All understandings between the Parties are incorporated in this Agreement.  Its terms are intended by the Parties as a final, complete, and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement.'"  There is no dispute that the RPA is the sole source of contractual liability in this case.  If there is contract liability in this case, it must be through the RPA.

The primary term at issue is "Furniture at showing or equivalent to be included by Listing Agents, not Seller."  The language "Listing Agents, not Seller" makes a clear distinction between the listing agents and seller.  The sellers are Morad and Nahid Golcheh.  The term "Listing Agents" does not indicate any specific person or entity.[1]

Dangoor focuses on the RPA's standard language of "'Real Estate Brokers are not parties to the Agreement between Buyer and Seller.'"  He initially argues that this precludes liability for both the broker and him but later narrows the argument to acknowledge that it allocates responsibility to the seller's side (but not the sellers) and still precludes liability for a salesperson.

---

[1]	Business & Professions Code section 10018.03 defines "listing agent" but it does not assist the analysis in this case. "'Listing agent' means a licensee who provides services requiring a real estate license for or on behalf of a seller pursuant to a listing agreement.  Listing agent includes a seller's agent." (Bus. & Prof. Code § 10018.03)

7

Rafiee responds that the language "refers to the main purchase transaction between buyer and seller": "It does not immunize agents from liability for specific obligations they assume within the contract. If Appellant's interpretation were correct, listing agents could make any promise in a real estate contract, no matter how explicit, and escape all accountability by pointing to the boilerplate 'not Parties' language." The problem is that the promise is not explicit concerning who the "Listing Agents" are.

"[W]hen a general and [a] particular provision are inconsistent, the latter is paramount to the former. So a particular intent will control a general one that is inconsistent with it." (Code Civ. Proc., § 1859; see *Maryland Casualty Co. v. State Industrial Accident Commission* (1930) 209 Cal. 394, 398 ["when general and particular provisions of a contract deal with the same subject matter, the specific provisions are of controlling force"]; *Prouty v. Gores Technology Group* (2004) 121 Cal.App.4th 1225, 1235 ["under well established principles of contract interpretation, when a general and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision"].) The general boilerplate that the broker is not a party is inconsistent with the specific provision that furniture will be provided by listing agents, not seller. So the more specific provision controls.

But that still does not answer the question of who is liable. Dangoor argues he is a real estate salesperson and an employee of Coldwell Banker Realty. He acts as an agent for Coldwell Banker Realty, and Coldwell Banker Realty is an agent for the sellers. As a real estate salesperson under California law, he cannot contract in his own name, nor accept compensation from any person other than the broker under whom he is licensed.

8

Thus, according to Dangoor, he cannot be liable for breach of contract.

California's Real Estate Law (Bus. & Prof. Code, § 10000 et seq.) creates a mandatory agency relationship between the licensed broker and the licensed salesperson.  "[T]he Legislature has, by virtue of statutory enactment, made such a salesman an agent of the broker as a matter of law," and a salesperson "can act only for, on behalf of, and in place of the broker under whom he is licensed, and . . . his acts are limited to those which he does and performs as an agent for such broker." (*Gipson v. Davis Realty Co.* (1963) 215 Cal.App.2d 190, 206-207.)  "'[A]ny contract which purports to change that relationship from that of agent to independent contractor is invalid as being contrary to the provisions of the Real Estate Law.'" (*Grubb & Ellis Co. v. Spengler* (1983) 143 Cal.App.3d 890, 895-896, quoting *Gipson*, at pp. 206-207; see also *Horiike v. Coldwell Banker Residential Brokerage Co.* (2016) 1 Cal.5th 1024, 1037-1040 [discussing the broker-salesperson agency structure].)  "A real estate salesperson is strictly the agent of the broker.  The salesperson cannot contract in his or her own name and cannot accept money from any person other than the broker under whom he or she is licensed." (*Venturi & Co. LLC v. Pacific Malibu Development Corp.* (2009) 172 Cal.App.4th 1417, 1424, fn. 8; see *Deane v. Superior Court* (1985) 164 Cal.App.3d 292, 296 [salesperson lacked legal capacity to contract in individual name]; *Grand v. Griesinger* (1958) 160 Cal.App.2d 397, 406 [salesperson "cannot contract in his own name [citations], nor accept compensation from any person other than the broker under whom he is licensed," deriving the rule from the "entire statutory scheme" of the Real Estate Law].)

Rafiee argues that "California law recognizes that an agent who expressly assumes a contractual obligation may be held personally liable, notwithstanding his agency status," citing *Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1442 (*Filippo*). Here, however, Dangoor never expressly assumed a contractual obligation. The court found that "Dangoor did not personally make promises to Rafiee regarding furniture in connection with the Transaction." Had the term been "Furniture at showing or equivalent to be included by Dangoor, not Seller" the outcome might be different. But the term here does not specifically identify Dangoor.

In addition, *Filippo*–the only case Rafiee cites in support of his argument on the contract issue[2]–does not support Rafiee, nor does it even include the language quoted in the Respondent's Brief. On the relevant issue of whether an agent for a disclosed principal can be liable, the court found "no substantial evidence to support a verdict against the agent McGee" and reversed the order denying judgment notwithstanding the verdict for McGee.

_____

[2] The only case we find in which a real estate salesperson is held personally liable for breach of contract relating to a real estate transaction involves a side contract between two salespersons to share commissions. (*Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1037.) The court discussed the statutory prohibitions on real estate salespersons contracting in their own names, citing Business & Professions Code section 10137 and *Grand v. Griesinger*, *supra*, 160 Cal.App.2d 397, and held "that two licensed real estate agents may agree to share commissions earned under the circumstances we describe in this opinion." (*Sanowicz*, at p. 1030.) This is not the situation here.

10

(*Filippo*, *supra*, 74 Cal.App.4th at p. 1445.) "'"Where an agent is duly constituted and names his principal and contracts in his name and does not exceed his authority, the principal is responsible and not the agent." [¶] This view has been adopted in California. Where the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent.'" (*Id.* at p. 1442.)

Furthermore, in this case, the court described "Defendant Coldwell Banker Realty" as "the real estate broker and listing agent that represented the sellers in the subject transaction" and "Defendant Re eBroker Group Inc." as "the referring real estate broker and co-listing agent representing the sellers in the subject transaction." Dangoor is described as "the real estate Salesperson under the employ of Coldwell Banker Realty." The court refers to Coldwell Banker Realty and Re eBroker Group Inc.—not Dangoor or the other salespersons—as listing agents.

The court found and the parties do not dispute that the RPA is the only contract at issue; that Dangoor is a "Real Estate Salesperson acting as an agent for [a broker] and not a 'Broker'"; that the RPA is integrated; that Dangoor did not sign the RPA; that Dangoor was acting "in the scope of his agency for the sellers"; and that Coldwell Banker Realty and Re eBroker Group Inc. could be described as "listing agents." Given these findings, Dangoor cannot be liable for breaching the contract term "Furniture at showing or equivalent to be included by Listing Agents, not Seller."[3]

---

[3] Dangoor also argues that the court erred in overruling his demurrer to the First Amended Complaint and that the court's damages award was an abuse of discretion. Because we conclude

11

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to enter judgment in favor of Dangoor. Dangoor is to recover his costs on appeal.


GIZA, J.*

We concur:


SEGAL, Acting P. J.


FEUER, J.

---

Dangoor cannot be liable under the contract as a matter of law, we do not reach these issues.

\*      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.